Filed 3/12/15  P. v. Cadena CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B258733 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA424943) |
| v. | |
| LINDA CADENA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Craig Richman, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Jessica C. Owen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Linda Cadena pled guilty to one count of possession of methamphetamine after her motion to suppress was denied by the trial court. On appeal, she challenges the trial court's ruling on the ground that the search was incident to an unlawful arrest or detention. We find she voluntarily consented to the search which led the police to find the methamphetamine in her purse. Accordingly, we affirm the judgment.

**FACTS**

On May 14, 2014, the Hollywood Division Narcotics Unit of the Los Angeles Police Department (LAPD) conducted an undercover drug purchase from Ida Garcia. Garcia consented to a search of her residence on Hoover Street after her arrest and gave the officers the keys to her apartment. At Garcia's apartment, the officers' attempts to enter were thwarted by someone inside who relocked the door immediately after officers unlocked it. When the officers were finally able to enter, they conducted a protective sweep with their guns drawn. They found Cadena about to exit the kitchen door, which led to an outdoor staircase. Cadena was detained because the officers believed she could be fleeing with evidence. Cadena was handcuffed and asked for her identification. She directed the officer to her purse and gave permission to look in it. A plastic bag containing a substance resembling methamphetamine was found inside Cadena's purse near her identification card.

Cadena was charged with one count of possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a). Cadena moved to suppress a glass bulb and the plastic bag found by the police in her purse. Both contained an off white substance resembling methamphetamine. Cadena argued that the search was incident to an unlawful arrest and therefore any evidence obtained from it should be suppressed. The trial court denied the motion. Although it found Cadena's detention rose to the level of an arrest, it found her consent was voluntary under the totality of the circumstances. The controlled substance was in plain view during the consensual search.

Cadena pled guilty to possession of methamphetamine. Her sentence was suspended and she was placed on probation for 12 months with orders to comply with numerous terms and conditions. Cadena timely appealed from the denial of her motion to suppress.

## DISCUSSION

On appeal, Cadena contends her consent was not voluntary within the meaning of the Fourth Amendment as it immediately followed an unlawful arrest or detention. According to Cadena, the officers lacked probable cause to arrest her prior to finding the drugs in her purse. Alternatively, she claims the officers lacked authority to detain her without an articulable suspicion she was involved in a crime. Thus, Cadena argues, "Consent which is given following an unconstitutional arrest is deemed involuntary and, therefore cannot serve to validate an otherwise unconstitutional search." We disagree. The undisputed facts show Cadena voluntarily allowed the police to search her purse during a lawful detention.

Cadena's first argument—that her consent was involuntary because it followed an unconstitutional arrest—is predicated on the trial court's determination that her detention rose to the level of an arrest. We start by finding the stop of Cadena was a detention and not an arrest. We are not bound to follow the trial court's conclusion to the contrary. Police contact with individuals fall into three basic categories: (1) "'consensual encounters'" which involve no restraint of liberty or seizure and may be initiated with no "'objective justification'"; (2) "'detentions'" which are seizures strictly limited in duration, scope and purpose and may be conducted upon an "'. . . articulable suspicion that a person has committed or is about to commit a crime'"; and (3) "arrests" which are seizures exceeding the permissible limits of a detention involving restraints comparable to a formal arrest and require probable cause to arrest. (*In re James D.* (1987) 43 Cal.3d 903, 911-912, cert. den. *James v. California* (1988) 485 U.S. 959.)

"'[T]here is no hard and fast line to distinguish permissible investigative detentions from impermissible de facto arrests. Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation

3

reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably available under the circumstances.'" (*People v. Celis* (2004) 33 Cal.4th 667, 674-675 (*Celis*), quoting *In re Carlos M.* (1990) 220 Cal.App.3d 372, 384-385.) The duration, scope, and purpose of a detention are important factors in determining whether it constituted a detention or an arrest. (*Celis,* at p. 675.) "Of significance too are the facts known to the officers in determining whether their actions went beyond those necessary to effectuate the purpose of the stop, that is, to quickly dispel or confirm police suspicions of criminal activity." (*Id.* at pp. 675-676.) Whether an interaction between the police and an individual constitutes a consensual encounter, a detention, or an arrest is an issue of law subject to de novo review on appeal. (*People v. Franklin* (1987) 192 Cal.App.3d 935, 940; see also *People v. Boyer* (1989) 48 Cal.3d 247, 262-263, 267-268 overruled on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824.)

The evidence presented at the hearing on Cadena's motion to suppress was undisputed. Each time police released one lock on Garcia's front door, someone inside the apartment locked it again. When the officers were finally able to enter the apartment, they identified themselves as LAPD and conducted a protective sweep with their guns drawn to ensure officer safety. They found Cadena about to leave through the back door. They stopped her and handcuffed her because they believed she could be fleeing with evidence. Cadena was then asked for identification and she directed the officers to her purse, giving them permission to look inside. These events occurred over the course of one or two minutes.

It is obvious from these facts that it was a detention rather than an arrest: police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly. That they handcuffed Cadena and had their guns drawn does not automatically transform the detention to an impermissible arrest. As explained by the California Supreme Court, "stopping a suspect at gunpoint, handcuffing him, and making him sit on the ground for a short period . . . do[es] not convert a detention into an arrest." (*Celis, supra,* 33 Cal.4th at p. 675.)

4

Anticipating our conclusion, Cadena also disputes the legality of the detention, contending that even a mere detention in these circumstances was unconstitutional. Cadena asserts the police lacked an articulable suspicion that she was involved in a crime at the time of her detention. Specifically, Cadena argues there is no authority which permitted officers to detain her while they conducted a search of Garcia's residence. She points out that there was no evidence anyone else was involved in the drug sale precipitating Garcia's arrest. Further, the LAPD officer who testified at the hearing admitted she did not see Cadena do anything criminal. Because Garcia was arrested elsewhere, there was no basis upon which police could reasonably impute knowledge of her illegal activities upon Cadena or any other occupant of the house. We disagree.

The California Supreme Court has explained, "When, in the course of initiating a search under warrant of a private residence for illegal drugs or related items, police officers encounter on the premises a person whose identity and connection to the premises are unknown and cannot immediately be determined without detaining the person, the officers may constitutionally detain him or her for the period of time required and in the manner necessary to make those determinations and to protect the safety of all present during the detention." (*People v. Glaser* (1995) 11 Cal.4th 354, 374.) We adopt *Glaser's* holding here. That the search was justified by Garcia's consent to search her apartment, rather than under a warrant does not impair the officers' authority to briefly detain an unknown person to determine her identity and connection to the residence; in either case, the officers were properly at the residence to conduct a valid search. (*People v. Rivera* (2007) 41 Cal.4th 304, 308 ["A warrantless search may be based on the consent of a person, other than the accused, who has control over the area searched"].) Indeed, if Cadena had been an occupant of the apartment, she could have overridden Garcia's consent to the search. (*Georgia v. Randolph* (2006) 547 U.S. 103, 114-115.) Therefore, it was incumbent upon the officers to determine Cadena's identity prior to conducting the search.

Given that Cadena was properly detained at the time of the search, there is no dispute that Cadena's consent to search her purse was voluntary and not the product of coercion or duress.  Cadena "agrees that if she was only **constitutionally detained,** not arrested, that her consent would be voluntary."  (Bold in original.)  Because Cadena consented to the search, we summarily reject her ancillary argument that Garcia lacked "actual authority to consent to a search of his/her guest's personal belongings, including a purse."

**DISPOSITION**

The judgment is affirmed.


BIGELOW, P.J.

We concur:


RUBIN, J.


GRIMES, J.

6